IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RICK DUBAS and ERIN DUBAS; <br><br> Plaintiffs, <br><br> vs. <br><br> CLARK EQUIPMENT COMPANY d/b/a BOBCAT COMPANY; <br><br> Defendant. | 8:20-CV-465 <br><br> MEMORANDUM AND ORDER |

This case comes before the Court on Defendant's partial Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court finds that (1) Plaintiffs have successfully stated a claim for strict products liability maintained by a bystander; (2) Plaintiffs have failed to state a claim that Defendant had a post-sale duty to warn, surveil, recall, and retrofit the product it manufactured; and (3) Plaintiffs have failed to state a claim for punitive damages. Therefore, the Court denies in part and grants in part Defendant's Motion to Dismiss.

## I.     BACKGROUND[1]

Plaintiffs Rick Dubas and Erin Dubas are husband and wife residing in Grand Island, Nebraska. Filing 1 at 1. Defendant Clark Equipment Company d/b/a Bobcat Company ("Clark Equipment") is a Delaware corporation with its principal place of business in West Fargo, North Dakota, properly registered to do business in the state of Nebraska. Filing 1 at 1. On August 30, 2019, Rick Dubas was cleaning cattle pens at the Nebraska State Fair using a gas-powered, backpack-style leaf blower when Kyle Sorenson, who was operating a Bobcat skid-steer loader in reverse, drove over Rick Dubas's left leg. Filing 1 at 3-4. Rick Dubas suffered severe crushing

---

[1] Although some of the facts recited herein may be disputed by Defendant, when deciding a motion to dismiss, the Court "must accept a plaintiff's factual allegations as true" and make all reasonable inferences in favor of the nonmoving party. *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012).

1

injuries to the bones and tissue of his left leg, blood loss, and infection, which led to surgeries, physical therapy, and numerous other damages. Filing 1 at 5.

The Dubases commenced this action against Clark Equipment, the designer and manufacturer of the skid-steer loader that was driven over Rick Dubas's leg, alleging strict products liability and negligence based on the lack of a rear-view camera system on the skid loader. Filing 1 at 4. Clark Equipment filed a partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Filing 16. It moves to dismiss the strict-products-liability claim in its entirety because it argues that injury to a non-user bystander is not a recognized cause of action in Nebraska. Filing 17 at 2. Clark Equipment also moves to dismiss the parts of both the strict-products-liability and negligent-liability claims in which the Dubases allege a post-sale duty to warn, surveil, recall, or retrofit the loader, which Clark Equipment also alleges is not a recognized cause of action in Nebraska. Filing 17 at 7-8. Lastly, Clark Equipment moves to dismiss the Dubases' prayer for punitive damages under North Dakota law, arguing that Nebraska law, not North Dakota law, applies to this claim and bars any claim for punitive damages as unconstitutional. Filing 17 at 2.

## II. DISCUSSION

### A. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 192 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015) (citations omitted) (quoting *Iqbal*, 556 U.S. at 678). "When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cnty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)).

### B. Consideration of Extrinsic Evidence

The Dubases ask the Court to consider Exhibit A which was attached to their Brief in Opposition to Clark Equipment's Rule 12(b)(6) Motion to Dismiss. Filing 20-1. Exhibit A is an affidavit by Shawn Warkenthien, an employee of Clark Equipment, dated July 8, 2020, which was filed in *Moreno v. Clark Equipment Company d/b/a Bobcat*, 15th Circuit for Palm Beach County, Florida, Case No. 50-2019-CA-013883. Warkenthien details Clark Equipment's internal discussions regarding whether to include rear-view cameras on their skid loaders. Filing 20-1 at 2-6.

3

This Court will not consider Exhibit A in deciding the present motion. Federal Rule of Civil Procedure 12(d) provides that when matters outside the pleadings are presented in relation to a motion under Rule 12(b)(6) and not excluded by the court, the motion shall be treated as one for summary judgment. *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999) (quoting *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992)). The Eighth Circuit Court of Appeals has interpreted "matters outside the pleadings" to include any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings. *Id.* There are three instances in which courts may consider matters outside the pleadings: (1) materials that are part of the public record; (2) materials that do not contradict the complaint, and; (3) materials that are necessarily embraced by the pleadings. *Smithrud*, 746 F.3d at 395. Exhibit A does not fall into any of these categories and the Court will therefore not consider it in relation to the present motion.

Furthermore, the Dubases appear to have proffered the exhibit as evidence to support their argument that bystanders can assert strict products liabilities claims because they are intended users "within the contemplation of the manufacturer in terms of the product's targeted purpose and audience," which is an old standard used by Pennsylvania Courts prior to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014). Filing 20 at 4. This exhibit is therefore not relevant to the Court's application of Nebraska law to the issues at hand. Accordingly, the Court excludes Exhibit A and does not consider it for purposes of the Rule 12(b)(6) Motion to Dismiss.

### C. Strict Products Liability

Clark Equipment moves to dismiss the Dubases' claim for strict products liability, asserting that Nebraska law does not recognize strict-liability claims brought by bystanders who are not

4

"users" or "consumers" of the product. Filing 17 at 7. The Court finds such a claim is cognizable under Nebraska law.

The Nebraska Supreme Court has not specifically addressed the issue of whether a bystander can maintain a strict-products-liability claim. "In determining the law of the State of Nebraska, [the Court] is bound by the decisions of the Nebraska Supreme Court." *Anderson v. Nissan Motor Co., Ltd.*, 139 F.3d 599, 601 (8th Cir. 1998) (quoting *Farr v. Farm Bureau Ins. Co. of Neb.*, 61 F.3d 677, 679 (8th Cir. 1995)). "If the Nebraska Supreme Court has not addressed the issue before [the Court], [it] must determine what the Supreme Court would probably hold were it to decide the issue." *Id.* (citing *Farr*, 61 F.3d at 679). "In making this determination, [the Court] may consider relevant state precedent, analogous decisions, considered dicta, scholarly works and any other reliable data." *Id.* at 601-02 (quoting *Farr*, 61 F.3d at 679). After a review of Nebraska's current products-liability law, this Court finds that the Nebraska Supreme Court would likely permit claims of strict products liability brought by bystanders.

1. *Review of Nebraska's Products Liability Law*

The Nebraska Supreme Court has generally adopted the Restatement (Second) of Torts § 402A (1965) approach to strict-products-liability cases. *See Kohler v. Ford Motor Co.*, 187 Neb. 428, 435-36, 191 N.W.2d 601, 606–07 (1971) (favorably citing the Restatement (Second) in adopting strict tort liability); *see also Sherrill v. Royal Indus., Inc.*, 526 F.2d 507, 511 (8th Cir. 1975) ("[T]he Nebraska Supreme Court has adopted in substance section 402A of the Restatement (Second) of Torts."). Section 402A(1) provides, in relevant part, "One who sells any product in a defective condition unreasonably dangerous *to the user or consumer* or to his property is subject to liability for physical harm thereby *caused to the ultimate user or consumer*, or to his property . . . ." Restatement (Second) of Torts § 402A (emphasis added). Clark Equipment relies on this "user

5

or consumer" language to suggest that bystanders should not be permitted to maintain strict-products-liability actions in Nebraska. Filing 17 at 7.

Currently, there is no Nebraska case law directly addressing the "user or consumer" language in the same context as this case. In *Haag v. Bongers*, 256 Neb. 170, 589 N.W.2d 318 (1999), the plaintiff was a third-party bystander who was injured at an estate auction when a hitch ball used on a towing vehicle became detached from the vehicle and flew in the air, hitting him in the head. *Id.* at 175, 589 N.W.2d at 324. The plaintiff brought an action against the estate, the auctioneers, and the manufacturer of the hitch ball. *Id.* Even though the plaintiff was not a user or consumer of the hitch ball, the manufacturer never raised nor argued the issue of the plaintiff's status as a bystander. *Id.* at 177-78, 589 N.W.2d at 325-26. The action was permitted to proceed; however, the court did not expressly discuss the bystander issue. *See id.*

In all other strict-products-liability cases under Nebraska law, the plaintiff has been some sort of user or consumer of the product that is allegedly defective. *See, e.g.*, *Pitts v. Genie Indus. Inc.*, 302 Neb. 88, 921 N.W.2d 597 (2019) (electrician who sustained injuries from aerial lift he was using brought products-liability action against manufacturer and designer of lift); *Jay v. Moog Auto., Inc.*, 264 Neb. 875, 652 N.W.2d 872 (2002) (mechanic who sustained injuries from compressor he was using brought products-liability action against manufacturer and designer of compressor); *Freeman v. Hoffman-La Roche, Inc.*, 260 Neb. 552, 618 N.W.2d 827 (2000) (consumer who sustained injuries after taking prescription medicine brought products-liability action against manufacturer of medication); *Rahmig v. Mosley Mach. Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987) (worker who sustained injuries from guillotine metal scrap shear he was using brought products-liability action against manufacturer and designer of machine); *Kohler*, 187 Neb. 428, 191 N.W.2d 601 (passenger who sustained injuries from automobile accident resulting from

a car defect brought products-liability action against manufacturer of the automobile); *Shuck v. CNH Am., LLC*, 498 F.3d 868 (8th Cir. 2007) (consumers who sustained injuries from use of their combine brought products-liability action against manufacturer and designer of combine); *Sherrill*, 526 F.2d 507 (farmer who sustained injuries from use of grain auger brought products-liability action against manufacturer and designer of machine).

Turning to the language of the Restatement (Second) of Torts upon which Clark Equipment relies, while § 402A itself refers to harm to a "user or consumer," the section is followed immediately by the following caveat: "The Institute expresses no opinion as to whether the rules stated in this Section may not apply (1) to harm to persons other than users or consumers . . . ." Restatement (Second) of Torts § 402A. Further, while § 402A has been adopted by the Nebraska Supreme Court as the general working standard for products-liability actions, it remains amenable to the state's laws and precedent. In other contexts, the Nebraska Supreme Court has modified its approach to products-liability actions by adopting themes from the Restatement (Third) of Torts as well. *See, e.g.*, *Pitts*, 302 Neb. at 108, 921 N.W.2d at 614. For example, in *Pitts*, the Nebraska Supreme Court elected to expand the doctrine of strict products liability by adopting the malfunction theory of strict products liability from the Restatement (Third) § 3. *Id.* at 108, 921 N.W.2d at 614. The malfunction theory allows plaintiffs to recover by providing circumstantial evidence when there is no direct evidence of a specific design defect. *Id.* at 107, 921 N.W.2d at 613. This expansion of strict-products-liability doctrine suggests that the Nebraska Supreme Court is likely in favor of a flexible approach in order to increase the opportunities for plaintiffs to recover under theories of product liability. This aligns with the Court's general policy of permitting strict products liability claims, which is to "exonerat[e] a claimant from what is frequently an

7

insurmountable burden of proof" in products-liability actions. *Rahmig*, 226 Neb. at 457, 412 N.W.2d at 78.

Additionally, existing Nebraska case law and jury instructions regarding strict-products-liability actions suggest no such "user or consumer" restriction on recovery. Under Nebraska law, a strict liability claim requires proof of the five following elements:

> (1) The defendant placed the product on the market for use and knew, or in the exercise of reasonable care should have known, that the product would be used without inspection for defects; (2) the product was in a defective condition when it was placed on the market and left the defendant's possession; (3) the defect is the proximate cause or a proximately contributing cause of *plaintiff's injury* sustained while the product was being used in the way and for the general purpose for which it was designed and intended; (4) the defect, if existent, rendered the product unreasonably dangerous and unsafe for its intended use; and (5) plaintiff's damages were a direct and proximate result of the alleged defect.

*Stahlecker v. Ford Motor Co.*, 266 Neb. 601, 615-16, 667 N.W.2d 244, 257-58 (2003) (emphasis added) (quoting *Kudlacek v. Fiat S.p.A.*, 244 Neb. 822, 829, 509 N.W.2d 603, 610 (1994)). Notably, the elements do not contain a "user or consumer" restriction but allow recovery by a generic "plaintiff."

Likewise, the Nebraska Civil Jury Instructions set forth five elements the plaintiff must prove to prevail on a strict products liability action against a manufacturer:

> (1) That the defendant placed the (*product*) in question in the market; (2) That, at the time the (*product*) left the defendant's possession, it was defective in one or more of the ways claimed by the plaintiff; (3) That this defect made the (*product*) unreasonably dangerous for its intended use, or for any use the defendant could have reasonably foreseen; (4) That this defect was a proximate cause of some damage to *the plaintiff*; and (5) The nature and extent of that damage.

1 Neb. Prac., NJI2d Civ. 11.20 (fourth emphasis added). Again, these elements do not contain a "user or consumer" limitation on recovery.

Neb. Rev. Stat. § 25-21,180 also defines a products-liability action without limiting it to users or consumers as "any action brought for or on account of personal injury, death, or property

8

damage caused by or resulting from the manufacture, design . . . of any product." There is further linguistic support from Black's Law Dictionary (11th ed. 2019), which defines "products liability" as "a manufacturer's or seller's tort liability for any damages or injuries suffered by a buyer, user, or *bystander* as a result of a defective product." (emphasis added).

Each of these authorities support that there is no "user or consumer" limitation and the Nebraska Supreme Court would allow strict-products-liability actions to be brought by injured bystanders if presented with the question. Further, when this issue has been raised in other jurisdictions in the Eighth Circuit, each state has opted to allow bystander recovery for strict-products-liability claims. See *Giberson v. Ford Motor Co.*, 504 S.W.2d 8 (Mo. 1974); *Haumersen v. Ford Motor Co.*, 257 N.W.2d 7, 16 (Iowa 1977); *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572 (Minn. 2012); § 33:14. Product liability, 1 Arkansas Law of Damages § 33:14 (updated Nov. 2020). Accordingly, the Court concludes the Dubases have stated a viable bystander claim for strict products liability.

*2. Strict Products Liability Actions by Bystanders and the Consumer Contemplation Test*

Having determined that the Nebraska Supreme Court would recognize strict-products-liability claims brought by bystanders, the Court must now determine which test the Supreme Court would choose to apply to bystander claims.

The two main approaches courts apply to bystander strict products liability claims are the risk-utility test set forth in the Restatement (Third) and the consumer-contemplation test currently employed in Nebraska for non-bystander strict-products-liability claims. The risk-utility test provides "a product is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller . . . and omission of the alternative design renders the product not reasonably safe." Restatement

(Third) of Torts: Prod. Liab. § 2(b) (1998). The risk-utility test requires the plaintiff to set forth a reasonable alternative design to compare to the design of the defective product to show "whether a reasonable alternative design would, at reasonable cost, have reduced the foreseeable risks of harm posed by the product and, if so, whether the omission of the alternative design by the seller or a predecessor in the distributive chain rendered the product not reasonably safe." Restatement (Third) of Torts: Prod. Liab. § 2, *cmt. d*. (1998).

The consumer-contemplation test, on the other hand, states that a product is unreasonably dangerous, resulting in strict products liability, when "the product has a propensity for causing physical harm beyond that which would be contemplated by the ordinary user or consumer who purchases it, with the ordinary knowledge common to the foreseeable class of users as to its characteristics." *Rahmig*, 226 Neb. at 440, 412 N.W.2d at 69 (quoting *Hancock v. Paccar, Inc.*, 204 Neb. 468, 484, 283 N.W.2d 25, 37 (1979)). Nebraska law currently employs the consumer-contemplation test for strict-products-liability actions.

The Court finds it unlikely that Nebraska courts would adopt the Restatement (Third) § 2(b)'s risk-utility test for strict products liability claims brought by bystanders when it employs the consumer-contemplation test for all other strict-products-liability plaintiffs. In *Rahmig*, 226 Neb. 423, 412 N.W.2d 56, the Nebraska Supreme Court overruled the requirement of producing a reasonable alternative design that was once required by *Nerud v. Haybuster Manufacturing., Inc.*, 215 Neb. 604, 614, 340 N.W.2d 369, 375 (1983). The Supreme Court overruled this requirement and readopted the consumer-contemplation test due to concerns that requiring a showing of feasibility or reasonable alternative design "unnecessarily invites perilous and unfairly prejudicial evidence of post-accident matters excludable under Neb. Evid. R. 407. The reason and policy consideration for Neb. Evid. R. 407 would be frustrated, if not totally annihilated." *Rahmig*, 226

10

Neb. at 464, 412 N.W.2d at 82. This suggests the Supreme Court favors the consumer-contemplation test in strict-products-liability cases and would not deviate from this uniform standard just because the plaintiff happens to be a bystander rather than a user or consumer.[2]

Therefore, this Court finds that the Nebraska Supreme Court would be likely to recognize strict-products-liability claims brought by bystanders, and that these claims would be evaluated under the consumer-contemplation test, similar to all products-liability cases under Nebraska law. Accordingly, this Court finds that the Dubases have stated a successful claim of strict products liability and Clark Equipment's Motion to Dismiss Count I of the Dubases' Complaint is denied.

### D. Claims Imposing Post-Sale Duties

Clark Equipment next seeks to dismiss the Dubases' allegations of post-sale duties contained in both Counts I and II of their complaint. Filing 1 at 9-10, 12-13. The Dubases allege Clark Equipment had duties to warn, surveil, recall, or retrofit the skid-steer loader *after* it was sold in paragraphs 45, 60, 61, 61(d), and 61(e) of their Complaint. Filing 1 at 9-10, 12-13. Clark Equipment argues these allegations fail to state a claim because Nebraska law does not impose any such post-sale duties on manufacturers. Filing 17 at 7-8. The Court finds such claims are not actionable under Nebraska law.

Clark Equipment points to *Anderson v. Nissan Motor Corp.*, 139 F.3d 599 (8th Cir. 1998), as controlling authority. In *Anderson*, the Eighth Circuit Court of Appeals conducted an examination of Nebraska law and held that the manufacturer of a forklift did not have either a post-sale duty to warn of dangers nor a post-sale duty to retrofit the forklift to enhance safety. *Id.* at

---

[2] Other states that abide by the § 402A strict-products-liability framework that allow claims to be brought by bystanders have opted to maintain the consumer-contemplation test for all strict-products-liability claims, including those brought by bystanders. *See, e.g.*, *Horst v. Deere & Co.*, 769 N.W.2d 536 (Wis. 2009) (holding that bystanders are permitted to bring strict products liability actions against manufacturers, and, affirming the use of the consumer-contemplation test for all strict-products-liability claims, including those involving bystander plaintiffs).

602. The Court of Appeals based its decision on the Nebraska Supreme Court's statements in *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987). *Id.*

As set forth above, in *Rahmig* the Nebraska Supreme Court rejected the prior adoption of the risk-utility test and explicitly readopted the consumer-contemplation test for products liability claims. *Rahmig*, 226 Neb. at 464-465; 412 N.W.2d at 70. In so holding, the court reaffirmed that a plaintiff's burden of proof in a products liability action is that the "defect existed *when the product left the manufacturer*." *Id.* at 441; 412 N.W.2d at 69 (emphasis added). Based on this statement in *Rahmig*, the Eighth Circuit Court of Appeals concluded in *Anderson* that Nebraska favors limiting the state's products-liability law to actions or omissions which occur at the time of manufacture or sale and dismissed the plaintiff's claims for post-sale duty to warn and post-sale duty to retrofit. *Anderson*, 139 F.3d at 602.

The Dubases acknowledge that the Nebraska Supreme Court has not imposed a post-sale duty to warn on manufacturers. Filing 20 at 14. They argue, however, that given the opportunity, the Nebraska Supreme Court has signaled it would extend the duty to warn to claims asserting post-sale duties like those claimed here. Filing 20 at 14. The Dubases base their argument on the Nebraska Supreme Court's holding in *Erickson v. U-Haul International, Inc.*, 274 Neb. 236, 738 N.W.2d 453, (2007). In *Erickson*, the Nebraska Supreme Court extended a duty to warn to the lessors of products in addition to sellers. *Id.* at 245, 461. The Dubases argue this means the Nebraska court would be in favor of further extending a duty to warn to post-sale claims like the ones at hand. Filing 20 at 14.

This Court finds this argument unpersuasive and *Anderson* controlling. The Nebraska Supreme Court's decision in *Erickson* imposing a duty to warn on lessors of a product when there is a special relationship established does not suggest that the Court would impose multiple post-

12

sale duties to warn, surveil, recall, and retrofit on manufacturers of products for products liability actions. There is no case law or statutory laws that suggest or otherwise point to Nebraska's potential willingness to impose any post-sale duties on a manufacturer in a products-liability action for the same reasons discussed by the Nebraska Supreme Court in *Rahmig*, cited by the Eighth Circuit in *Anderson*.[3] Absent a subsequent state court decision or a statutory amendment rendering *Anderson*'s prediction wrong, *Anderson v. Nissan Motor Corp.*, 139 F.3d 599, 602 (8th Cir. 1998) is controlling, and therefore the Dubases' claims asserting post-sale duties to warn, surveil, recall, and retrofit in both Counts I and II of their Complaint are dismissed.

### E. Punitive Damages

Clark Equipment moves to dismiss the Dubases' prayer for punitive damages, arguing Nebraska law prohibits such damages. Filing 17 at 8. The Dubases assert North Dakota law, not Nebraska law, should apply to the determination of punitive damages. Filing 20 at 18. They argue the policy decision to place profit over safety was made in North Dakota where Clark Equipment has its principal place of business. Filing 20 at 15. The Court finds Nebraska law governs and prohibits the request for punitive damages.

In a diversity case, the Court applies the choice-of-law rules of the forum state—in this case, Nebraska. *Schaffart v. ONEOK, Inc.*, 686 F.3d 461, 475 (8th Cir. 2012) (citing *Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786, 796 (8th Cir. 2005)) ("In this diversity case, we apply the choice of law rules of Nebraska, the forum state."). Nebraska law provides that "[t]he first step in a conflict-of-law analysis is to determine whether there is an actual conflict between the legal rules

---

[3] This is in accordance with other states within the Eighth Circuit which decline to impose post-sale duties on manufacturers. *See Burke v. Deere & Co.*, 6 F.3d 497 (8th Cir. 1993) (Iowa law); *Ahlberg v. Chrysler Corp.*, 481 F.3d 630 (8th Cir. 2007) (Iowa law); *Horstmyer v. Black & Decker, (U.S.), Inc.*, 151 F.3d 765 (8th Cir. 1998) (Missouri law).

of different states." *Johnson v. U.S. Fid. & Guar. Co.*, 269 Neb. 731, 736, 696 N.W.2d 431, 436 (2005). "An actual conflict exists when a legal issue is resolved differently under the law of two states." *Id.* The Court proceeds to apply choice of law rules if the Court concludes that "an actual conflict exists." *Id.* at 737, 696 N.W.2d at 437.

Under Nebraska law, "punitive, vindictive, or exemplary damages contravene Neb. Const. art. VII, § 5, and thus are not allowed in this jurisdiction." *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 139, 903 N.W.2d 432, 458 (2017) (quoting *Distinctive Printing & Packaging Co. v. Cox*, 232 Neb. 846, 857, 443 N.W.2d 566, 574 (1989). In contrast, under North Dakota law, punitive damages are permitted "to punish the wrongdoer in order to deter him, and others, from repetition of the wrongful conduct." *Ingalls v. Paul Revere Life Ins. Group*, 561 N.W.2d 273, 284 (N.D. 1997) (quoting *Delzer v. United Bank*, 559 N.W.2d 531, 538 (N.D. 1997)). Therefore, because there is an actual conflict between the laws of the two states, the Court must apply Nebraska's choice of law rules. *Johnson*, 269 Neb. at 737, 696 N.W.2d at 437.

Nebraska courts apply the "most significant relationship" test to determine choice-of-laws questions relating to damages in tort cases. *O'Brien*, 298 Neb. at 140, 903 N.W.2d at 459. Section 145 of the Restatement (Second) of Conflict of Laws states, "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 145(1). Section 6, in turn, sets forth the policy considerations a Court should consider in making a choice-of-laws decision, including:

>    (a) the needs of the interstate and international systems,
>    (b) the relevant policies of the forum,
>    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

14

>(d) the protection of justified expectations,
>(e) the basic policies underlying the particular field of law,
>(f) certainty, predictability and uniformity of result, and
>(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflicts of Laws § 6.

Section 145, in turn, states that the contacts to be considered in determining which forum has the most significant relationship include:

>(1) the place where the injury occurred,
>(2) the place where the conduct causing the injury occurred,
>(3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>(4) the place where the relationship, if any, between the parties occurred.

Restatement (Second) of Conflicts of Laws § 145. "The contacts are not to be given equal weight mechanically, but should each be considered in light of their relative importance with respect to the particular issue under consideration." *O'Brien*, 298 Neb. at 140, 903 N.W.2d at 459 (citing the Restatement (Second) of Conflicts of Laws § 145(2)). "Comment *d*. of [the Restatement (Second) of Conflicts of Laws] § 171 addresses punitive damages and directs that the law selected by the application of the rule of § 145 determines the right to exemplary damages." *Id*. at 140-41, 459 (quoting the Restatement (Second) of Conflicts of Laws § 171, comment *d*. at 512).

In *O'Brien*, the Nebraska Supreme Court determined that Nebraska law rather than Kansas law governed the question of punitive damages. *Id*. at 142, 903 N.W.2d at 460. In that case, a commercial pilot who sustained serious injuries brought a products-liability action against the aircraft's designer and manufacturer for a crash that occurred in heavy fog and icy conditions on theories of strict liability, negligence, and fraudulent misrepresentation concerning claimed defects in the pneumatic deicing system that caused the plane to crash. *Id*. at 114-16, 903 N.W.2d at 444-45. Applying the § 145 factors, the district court held that the case had "numerous, strong contacts

15

to Nebraska that inform Nebraska's interest in applying its laws to the issue of punitive damages."

*Id*. at 141, 903 N.W.2d at 460. Those contacts included:

> the injury took place in Nebraska, Plaintiffs are Nebraska residents, [the plaintiff] was flying a regular route within Nebraska at the time of the accident, . . . the owner of the aircraft and employer of [the plaintiff] is a Nebraska resident, [the plaintiff] was treated in Nebraska, the . . . product at issue as operated at all relevant times within the borders of Nebraska and the alleged product failures took place in [Nebraska].

*Id*. Importantly, the district court noted that "while important decisions and product manufacture took place in Kansas, the overall weight of the contacts in this case pointed towards Nebraska having the most significant relationship with the issue." *Id*. at 142, 903 N.W.2d at 460.

*O'Brien* is analogous to the case at hand. The injury occurred in Nebraska, the Dubases are domiciled in Nebraska, Clark Equipment conducts business in Nebraska and is registered to do business in Nebraska. The relationship between the parties is centered around Clark Equipment's conduct of business in Nebraska and delivery of an allegedly defective product to a Bobcat dealership in Grand Island, Nebraska, which is where the Dubases sustained injuries. *See generally* Filing 1. Despite the fact Clark Equipment made some business decisions in North Dakota where it is headquartered, the balance of the factors weighs in favor of Nebraska having the most significant relationship to the dispute. Furthermore, none of the underlying policy considerations set forth in § 6 weigh in favor of a different outcome.

The Dubases urge this Court for a different result under *Fanselow v. Rice*, 213 F. Supp. 2d 1077 (D. Neb. 2002). Filing 20 at 15-16. They argue *Faneslow* employed a more explicit analysis of factors set forth in § 6 of the Restatement (Second) of Conflict of Laws which the *O'Brien* court failed to perform. *Id* at 1081. The Court finds this argument unpersuasive. While the *O'Brien* court focused on the factors regarding the contacts with the forum state under § 145, it also noted the

16

lower court "had analyzed the pertinent sections of the Restatement," which would include the policy consideration of § 6. *O'Brien*, 298 Neb. at 141, 903 N.W.2d at 459. Thus, the Court did not fail to perform the proper analysis as the Dubases contend. Filing 20 at 16. The proper analysis applied here likewise leads to the conclusion that Nebraska law should apply to the question of punitive damages.[4] Accordingly, Clark Equipment's Motion to Dismiss the Dubases' prayer for punitive damages is granted.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the Dubases have stated a claim for strict products liability, and Clark Equipment's motion to dismiss that claim must be denied. However, the Dubases have failed to state a claim upon which relief can be granted for their claims imposing post-sale duties to warn, surveil, recall, and retrofit on Clark Equipment as well as their prayer for punitive damages under North Dakota law, and Clark Equipment's motion to dismiss is granted as to those claims. Accordingly,

IT IS ORDERED:

1. Defendant's Motion to Dismiss (Filing 16) is denied as to Count I of Plaintiffs' Complaint relating to strict products liability;

2. Defendant's Motion to Dismiss (Filing 16) is granted as to those portions of the Complaint relating to post-sale duties to warn, surveil, recall, and retrofit found in paragraphs 45, 60, 61, 61(d), and 61(e); and

3. Defendant's Motion to Dismiss (Filing 16) is granted as to Plaintiffs' prayer for punitive damages under North Dakota law.

---

[4] Since Nebraska law will dictate the availability of punitive damages in this action, the issue of whether the Dubases correctly pled punitive damages under North Dakota law is moot.

Dated this 31st day of March, 2021.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge